## (May 15, 1956)

■ Abraham Goldstein, as Temporary Administrator of the Estate of Rose Goldstein, Deceased, Appellant, v. Ada Amorose, Respondent.

Frank, J. (dissenting). On March 12, 1948 the plaintiff's intestate, Rose Goldstein, then about 75 years old, executed a deed transferring a building on West 86th Street, in the borough of Manhattan, to the defendant. Three years later Mrs. Goldstein was declared judicially incompetent, and died soon thereafter. The defendant was an acquaintance and neighbor of Mrs. Goldstein for a comparatively short period of time. There was no degree of relationship, nor is there any clear indication that she would normally be the object of the bounty of the deceased.

The property conveyed had an assessed value of $41,000. Initially the deceased expressed a desire to deed the proprety to the defendant, a virtual stranger, upon the latter's promise to take care of her. It was solely upon the insistence of the attorney who represented both parties and whose fee was paid by the defendant, that in addition to the promise of future care, a more tangible consideration was proffered. The parties, at his suggestion, agreed that $1,000 was to be paid by the defendant who was also to execute a so-called purchase-money mortgage in the sum of $10,000. Simultaneously a will was prepared for Mrs. Goldstein which contained a provision that the mortgage was to be cancelled and discharged upon her death.

The principal issue on this appeal is whether on March 12, 1948 Mrs. Goldstein was mentally competent and capable of understanding her act in executing the deed. Witnesses with respect thereto were produced by each of the parties to the litigation. The plaintiff produced those who testified as to many irrational acts of the plaintiff both before and after the crucial date, and, in addition to this factual testimony, two physicians who were specialists in neurology and psychiatry were called and gave fact and opinion evidence. Defendant called witnesses who testified as to her conduct on the date of the conveyance, and others as to acts performed at other times, which they called rational. The defendant offered no one to give testimony to contradict the plaintiff's medical proof.

The doctors testified to the examinations they had made of the deceased in the early part of 1951, shortly before her commitment as an incompetent. Neither had examined her in 1948. These medical specialists agreed that

in 1951 Mrs. Goldstein suffered from "profound senile deterioration", also referred to as "an organic brain condition" and that she had "senile and arteriosclerotic dementia." The record is barren of satisfactory exploration of the nature, extent, duration and onset of the affliction, although it is fairly common knowledge that the condition from which the deceased suffered is a disease of slow and gradual development. Based upon hypothetical questions, both psychiatrists testified that in their opinion Mrs. Goldstein was psychotic, could not understand or manage her business affairs, and could not understand the realty transactions she had entered into in 1948.

While it may appear that *Shallow* v. *Metropolitan Life Ins. Co.* (278 App. Div. 328) is authority for the defendant's position, an examination of the record in that case discloses undisputed facts clearly distinguishable from those here present. The *Shallow* case involved a change made by decedent in a beneficiary provision of his insurance policy in favor of defendant Carballal. She had lived with him for 17 years. He died as the result of cardiac failure. The testimony of medical practitioners, who were not specialists, that he had difficulty in breathing because of an impairment of the respiratory center in the brain and which they contended caused a mental disturbance, was seriously disputed by other medical proof. There the transaction was not between virtual strangers as here, nor was the deceased's condition one of "profound senile deterioration."

The facts in the case at bar more nearly resemble those in *Larkin* v. *Rejebian* (271 App. Div. 910). The *Larkin* record on appeal discloses a conveyance of real property in exchange for a promise to take care of the grantor. As here, the lawyer who prepared the deed and attended to its execution testified that the grantor acted rationally. The medical proof indicated that the incompetent suffered from cerebral arteriosclerosis similar to the condition of Mrs. Goldstein. The finding of the trial court that the grantor was competent was reversed by the Appellate Division (3d Dept.) and new contrary findings made.

In the case at bar, the Special Referee found for the defendant and held, "that on March 12, 1948, the date of the execution of the deed to the premises here involved, Rose Goldstein, the deceased grantor, was of sound mind and mentally capable of entering upon and completing such transaction." Further, he decided that the deed was delivered "for a good and valuable consideration". No finding was made with respect to the evaluation of the testimony of the psychiatrists. The court, during the course of the trial, dwelled upon whether or not the deceased could have had "lucid periods" although no mention is made in the decision that the conveyance was made at such a time.

Entirely aside from the medical proof which strongly suggests the mental incapacity of the decedent when she executed this deed, the nakedness of the consideration itself indicates neither an understanding mind nor a normal judgment. The grantee was the merest stranger to the decedent; she was a recent acquaintance having no relationship. She got her deed for a purported consideration of $1,000; an agreement to care for the decedent, and a mortgage.

No clear proof of the monetary payment is in the record which is, in this respect, left quite equivocal. No actual care or offer of care for decedent was established. The Surrogate has as yet made no determination concerning the competency of the decedent when the purported will was executed. Should it be admitted upon the ground that the decedent was of sound mind when it was made, as has been held with respect to the deed, the mortgage will be discharged and all the "consideration" purported to have been given to Mrs. Goldstein will have become totally illusory.

This is not the kind of deed which a person in possession of sound sense executes, and when it is found that a stranger to the blood has benefited in very substantial measure, the matter should be examined with marked reservation. When there is added to these facts surrounding the challenged transaction itself, strong proof of contemporaneous conduct that is queer and dislocated, and when within three years thereafter competent psychiatric studies of the grantor showed her to be insane and suffering from a mental disorder of gradual and long development bound to have adversely affected her mental capacity at the time this deed was executed, the policy of the court ought to be to undo the act and to treat the granting of valuable property as a nullity.

The record does not allow much scope to the speculation that decedent may have had a " lucid interval " when she signed the deed. It strongly suggests, rather, that the deed be cancelled, and the grantee, who gave up nothing, be left where she was before she undertook this dealing with decedent. As a very minimum there should be a new trial admitting wide and unrestricted scope to proof of decedent's mental capacity.

Under all the circumstances, therefore, we believe that the determination of the trial court should be reversed and a new trial ordered.

Botein, J. P., Valente and Bastow, JJ., concur in decision; Frank, J., dissents and votes to reverse and grant a new trial in opinion in which Bergan, J., concurs.

Judgment affirmed, with costs.